UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

ROBERT L.,  :
        Plaintiff,  :
    :
      v.  :    C.A. No. 25-335-PAS
    :
FRANK BISIGNANO,  :
Commissioner of the Social Security Administration,:
        Defendant.  :

**MEMORANDUM AND ORDER**

PATRICIA A. SULLIVAN, United States Magistrate Judge.

    From November 2015 until February 2018, Plaintiff Robert L., a former ship fitter/welder who owns and receives rental income from real estate properties, was found to be disabled due to chronic kidney disease resulting in a kidney transplant. Tr. 74-76. However, on February 12, 2019, an administrative law judge ("ALJ") found that Plaintiff's renal condition had medically improved and that it and his other impairments – chronic fatigue, chronic pain syndrome, myopathy, joint disease of the shoulder and elbow tendinitis – were severe but not so limiting as to preclude work. Tr. 74-85.

    On October 11, 2022, when he was fifty four years old, Plaintiff again filed an application (his fourth) for Disability Insurance Benefits ("DIB") based on similar impairments – chronic pain, fatigue, surgery on both hands, arthritis, musculoskeletal pain and post-kidney transplant. Regarding his rental properties, Plaintiff testified that, since 2015, he had done no work (not even "if it was just for one day") and that his "maintenance, repairs, and yard work [are] cared for by friends." Tr. 40-41, 278. With a date-last-insured of June 30, 2022, the closed period in issue for the fourth application is February 13, 2019, to June 30, 2022.

A different ALJ considered the evidence of record for the fourth application, including the administrative findings of four non-examining psychologists and physicians that Plaintiff had no severe impairments (which the ALJ found to be unpersuasive)[1] to find that Plaintiff was severely limited by essentially the same impairments,[2] but that he retained the RFC[3] to perform light work with significant exertional, postural, manipulative and environmental limits and with mental limits to accommodate pain and fatigue. Tr. 22-25. The ALJ's decision relies in part on Plaintiff's subjective statements regarding pain and fatigue, but also on Plaintiff's conservative care; treatment with medications that do not contain narcotics, no injections and no assistive device for ambulation; examination findings (including normal gait and full muscle strength); minimal treatment during the period in issue; lack of diagnosis of an inflammatory condition (such as rheumatoid arthritis); generally normal kidney function; lack of such symptoms as swollen lymph nodes, extreme pallor, ataxia and diminished grip strength; and Plaintiff's statements regarding his activities, which included personal grooming, cooking, cleaning, laundry, driving, and shopping in stores. Tr. 23-24. No opinion supports greater limits than

---

[1] Two non-examining physicians examined all of the records for the closed period in issue and found that Plaintiff suffered from an array of physical impairments but that none of them severely impacted his ability to work. Two non-examining psychologists examined the same records and found that, for the closed period in issue, they did not establish any mental medically determinable impairments. In reliance on "the evidence as a whole," the ALJ found Plaintiff to be more limited than the non-examining experts. Tr. 23-24. To that extent, she found their opinions to be unpersuasive. Specifically, the ALJ found that Plaintiff was exertionally, posturally, manipulatively and environmentally limited in his physical capacity, as well as that his chronic pain and fatigue interfered with his ability to focus on more complex tasks.

[2] As found by the ALJ for the current application, during the closed period in issue, Plaintiff was severely impaired by chronic fatigue syndrome, chronic myofascial pain syndrome, degenerative joint disease of the right shoulder, right shoulder bursitis, right elbow epicondylitis and chronic kidney disease. Tr. 21.

[3] RFC refers to "residual functional capacity." It is "the most you can still do despite your limitations," taking into account "[y]our impairment(s), and any related symptoms, such as pain, [that] may cause physical and mental limitations that affect what you can do in a work setting." 20 C.F.R. § 404.1545(a)(1).

what the ALJ found; indeed, no medical source has opined that Plaintiff had any material work-limiting symptoms during the closed period in issue.

Now pending before the Court on consent pursuant to 28 U.S.C. § 636(c) is Plaintiff's motion seeking reversal for further consideration of the determination of the Commissioner of Social Security ("Commissioner") denying his claim. ECF No. 9. Plaintiff argues that remand is required because the ALJ did not properly evaluate Plaintiff's chronic fatigue syndrome, myofascial pain syndrome and related limitations in that she erroneously relied on the absence of certain objective signs contrary to the applicable Policy Rulings [SSR 12-2p, 2012 WL 3104869 (July 25, 2012) (Evaluation of Fibromyalgia); SSR 14-1p, 2014 WL 1371245 (Apr. 3, 2014) (Evaluating Claims Involving Chronic Fatigue Syndrome); and SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017) (Evaluation of Symptoms of Disability Claims)]. ECF No. 9. Second, Plaintiff contends that his activities as recited in the ALJ's decision do not contradict his subjective statements about the limiting effects of pain and fatigue. Id. Third, Plaintiff argues that the ALJ erred in failing to analyze Plaintiff's post-date-last-insured diagnosis of attention deficit disorder ("ADD") and his allegations of concentration symptoms ("brain fog") during the period in issue. Id.

In response, the Commissioner contends that the ALJ appropriately weighed the substantial evidence as required by law and found Plaintiff to be seriously limited both physically and mentally, including by pain and fatigue, albeit not to the degree Plaintiff alleged. The Commissioner emphasizes that there is no medical source opining to symptoms as limiting as the ALJ found. ECF No. 11. The Commissioner also asks the Court to consider that, buried in this dense and lengthy medical record, are Plaintiff's statements to, and clinical observations by, treating sources pertaining to the period in issue, which were not cited by the ALJ, but which

dramatically contradict Plaintiff's subjective statements regarding his activities and the severity of his symptoms that he proffered in support of his application.  Id.  Exemplars of these statements are:

- "I have a job to do, on my knees, replacing a floor.  I will pace myself.  The back is manageable.  I do need to stretch.  I have been walking some, like a semi-power walk, approx. 3 days a week."  Tr. 458

- "I am doing all kinds of things now."  Tr. 463.

- "I am working on a house, doing walls and other things."  Id.

- "Have been doing yard work, hedge trimming."  Tr. 466.

- "I . . . have been walking – increasing my morning walking as general exercise."  Id.

- "Continues to do his housework/yardwork/cares for properties."  Tr. 475.

- "He works on repairs, remodeling on his own properties.  This requires intermittent heavy exertions."  Tr. 479.

- "[Plaintiff] reports he is doing well.  No complaints . . . [o]wns rental properties and does go out to do work."  Tr. 524.

- "[O]wns properties and has to do hard work to keep them updated."  Tr. 533.

- Seeking care for "bug bite while doing yardwork."  Tr. 625-26.

In reliance on these arguments, the Commissioner has filed a counter motion for an order affirming the ALJ's decision.  ECF No. 11.

**I.**     **Standard of Review**

As long as the correct legal standard is applied, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g); see Purdy v. Berryhill, 887 F.3d 7, 13 (1st Cir. 2018).  "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high."

Biestek v. Berryhill, 587 U.S. 97, 103 (2019).  Substantial evidence "means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. (internal quotation marks omitted).  Though the difference is quite subtle, this standard is "somewhat less strict" than the "clearly erroneous" standard that appellate courts use to review district court fact-finding.  Dickinson v. Zurko, 527 U.S. 150, 153, 162-63 (1999).  Thus, substantial evidence is more than a scintilla – it must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  See generally Irlanda Ortiz v. Sec'y of Health & Hum. Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam).

Once the Court concludes that the decision is supported by substantial evidence, the Commissioner must be affirmed, even if the Court would have reached a contrary result as finder of fact.  Rodriguez Pagan v. Sec'y of Health & Hum. Servs., 819 F.2d 1, 3 (1st Cir. 1987) (per curiam).  The determination of substantiality is based upon an evaluation of the record as a whole.  Frustaglia v. Sec'y of Health & Hum. Servs., 829 F.2d 192, 195 (1st Cir. 1987) (per curiam); Brown v. Apfel, 71 F. Supp. 2d 28, 30 (D.R.I. 1999), aff'd, 230 F.3d 1347 (1st Cir. 2000); see Parker v. Bowen, 793 F.2d 1177, 1180 (11th Cir. 1986) (per curiam) (court must consider evidence detracting from evidence on which Commissioner relied).  The Court's role in reviewing the Commissioner's decision is limited.  Brown, 71 F. Supp. 2d at 30.  The Court does not reinterpret or reweigh the evidence or otherwise substitute its own judgment for that of the Commissioner.  Thomas P. v. Kijakazi, C.A. No. 21-00020-WES, 2022 WL 92651, at *8 (D.R.I. Jan. 10, 2022), adopted by text order (D.R.I. Mar. 31, 2022).

**II.     Disability Determination**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 416(i); 20 C.F.R. § 404.1505(a). The impairment must be severe, making the claimant unable to do previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-1511.

### A.     The Five-Step Evaluation

The ALJ must follow five steps in evaluating a claim of disability. See 20 C.F.R. § 404.1520(a). First, if a claimant is working at a substantial gainful activity, the claimant is not disabled. Second, if a claimant does not have any impairment or combination of impairments that significantly limit physical or mental ability to do basic work activities, then the claimant does not have a severe impairment and is not disabled. Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Appendix 1, the claimant is disabled. Fourth, if a claimant's impairments do not prevent doing past relevant work, the claimant is not disabled. Fifth, if a claimant's impairments (considering RFC, age, education and past work) prevent doing other work that exists in the local or national economy, a finding of disabled is warranted. Significantly, the claimant bears the burden of proof at Steps One through Four, but the Commissioner bears the burden at Step Five. Sacilowski v. Saul, 959 F.3d 431, 434 (1st Cir. 2020); Wells v. Barnhart, 267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five step process applies to DIB claims).

### B.     Opinion Evidence

An ALJ must consider the persuasiveness of all medical opinions in a claimant's case record. See 20 C.F.R. § 404.1520c. The most important factors to be considered when the

Commissioner evaluates the persuasiveness of a medical opinion are supportability and consistency; these are usually the only factors the ALJ is required to articulate. Id. § 404.1520c(b)(2); Elizabeth V. v. O'Malley, C.A. No. 23-00459-WES, 2024 WL 1460354, at *3 (D.R.I. Apr. 4, 2024), adopted by text order (D.R.I. Apr. 19, 2024). Supportability refers to the quantum of relevant objective medical evidence and supporting explanations presented by a medical source to support the medical opinion or prior administrative medical findings; consistency refers to the degree to which a medical opinion or prior administrative medical finding is consistent with the evidence from other medical sources and nonmedical sources in the claim. 20 C.F.R. § 404.1520c(c)(1)-(2). In considering whether, and to what extent, to rely on medical/expert opinions, the ALJ may pick and choose among portions of them, finding parts persuasive and other parts less so. Samantha B. v. Bisignano, C.A. No. 25-00004MSM, 2025 WL 2992378, at *6 (D.R.I. Oct. 24, 2025), adopted, 2025 WL 3283309 (D.R.I. Nov. 25, 2025). Nor does an ALJ err when she imposes more restrictive limitations than the state agency consultants imposed. Steven A. v. O'Malley, No. 23-cv-544-WES, 2024 WL 4344865, at *6 (D.R.I. Sept. 30, 2024), adopted by text order (D.R.I. Oct. 18, 2024); see Halla v. Colvin, Case No. 15-cv-30021-KAR, 2016 WL 234802, at *7 (D. Mass. Jan. 20, 2016) ("Plaintiff ha[d] no basis for an objection to the RFC assessment crafted by the ALJ when it was more conservative than the recent RFC assessments of nonexamining reviewing physicians on which the ALJ was entitled to rely."). The ALJ's duty to "articulate how [she] considered the medical opinions and prior administrative medical findings" is not onerous. 20 C.F.R. § 404.1520c(a); see Warnell v. O'Malley, 97 F.4th 1050, 1053 (7th Cir. 2024) (ALJ need not provide complete evaluation of every piece of testimony and evidence).

    **C.**    **Claimant's Subjective Statements**

A claimant will not be considered disabled unless medical and other evidence (e.g., medical signs and laboratory findings) is furnished showing the existence of a medical impairment that could reasonably be expected to produce the pain, fatigue or symptoms alleged. 42 U.S.C. § 423(d)(5)(A). If an impairment is established, pain and fatigue are subjective symptoms that "can constitute a significant non-exertional impairment." See Nguyen v. Chater, 172 F.3d 31, 36 (1st Cir. 1999) (per curiam). Guidance in evaluating the claimant's statements regarding the intensity, persistence and limiting effects of such subjective symptoms is provided by SSR 16-3p, 2017 WL 5180304, which directs the ALJ to consider the entire case record, including the objective medical evidence, the individual's statements, statements and other information provided by medical sources and other persons, and any other relevant evidence, as well as whether the subjective statements are consistent with the medical signs and laboratory findings. Id. at *2-6. As the First Circuit has emphasized, in the absence of direct evidence to rebut a claimant's testimony about subjective symptoms, such statements should be taken as true. Sacilowski, 959 F.3d at 441; Tegan S. v. Saul, 546 F. Supp. 3d 162, 169 (D.R.I. 2021). That is, if proof of disability is based on subjective evidence and a credibility determination is critical to the decision, the subjective statements must either be explicitly discredited or the implication of lack of credibility must be so clear as to amount to a specific credibility finding. Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995) (per curiam); see Vanessa C. v. Kijakazi, C.A. No. 20-363MSM, 2021 WL 3930347, at *4 (D.R.I. Sept. 2, 2021), adopted, 2021 WL 8342850 (D.R.I. Nov. 2, 2021). Although the law is clear that an individual's statements as to pain are not conclusive of disability, 42 U.S.C. § 423(d)(5)(A), remand is required if the ALJ fails to perform this analysis as long as the claimant has sustained his burden of presenting a competent treating source opinion endorsing both the diagnosis of an impairment that causes subjective pain, as well

8

as function-limiting pain.  Tegan S., 546 F. Supp. at 171.  An ALJ's "extreme insistence on objective medical findings to corroborate subjective testimony of limitation of function because of pain is error."  Amanda B. v. Kijakazi, C.A. No. 21-308MSM, 2022 WL 3025752, at *2-3 (D.R.I. Aug. 1, 2022), adopted, 2022 WL 18910865 (D.R.I. Nov. 7, 2022) (internal quotation marks omitted).

When the subjective pain/fatigue is caused by chronic fatigue syndrome, fibromyalgia or an analogous impairment (such as chronic myofascial pain syndrome), additional guidance for adjudicators may be found in SSR 14-1p (Chronic Fatigue Syndrome) and SSR 12-2p (Fibromyalgia).  These rulings lay out the diagnostic criteria to determine whether the respective impairment exists and, if it does, how to assess the intensity and persistence of the symptoms of the impairment.  In addition to objective evidence, like SSR 16-3p, these rulings direct the ALJ to examine the claimant's subjective statements and the statements of others, as well as the claimant's activities, medications, treatments and treatment-seeking behaviors, among other evidence.  See Patrick F. v. Kijakazi, C.A. No. 22-212MSM, 2023 WL 2770389, at *2-3 (D.R.I. Apr. 4, 2023), adopted, 2023 WL 6004594 (D.R.I. July 10, 2023); see Johnson v. Astrue, 597 F.3d 409, 412-13 (1st Cir. 2009) (per curiam) (error to conclude that claimant retained functional capacity for light work based solely on lack of objective findings when such lack is what can be expected in fibromyalgia cases).

### III.  Analysis

Plaintiff contends that the ALJ did not properly evaluate his chronic fatigue syndrome and myofascial pain syndrome and related limitations.  The specific error alleged is that the ALJ relied on the absence of certain objective signs, which Plaintiff argues are relevant to the

determination whether chronic fatigue syndrome is an impairment, yet the diagnosis was not in issue in that the ALJ accepted chronic fatigue syndrome as a severe impairment at Step Two.

This contention may be given short shrift because the ALJ's decision correctly cites to SSR 16-3p, with consideration of the guidance in SSR 14-1p and SSR 12-2p, as the basis for the symptom severity/intensity/persistence assessment and, consistent with this guidance, the ALJ's analysis correctly and accurately weighs substantial evidence, including Plaintiff's statements, his activities as he described them in his testimony and in the Function Report, his objective symptoms on examination (particularly motion without pain, full muscle strength and normal gait) and his treatment, which the decision describes as minimal and conservative during the period in issue. See Tr. 18-27. Thus, the ALJ did not fail properly to assess the many factors listed in the applicable guidance; her decision is clear that is precisely what she did in finding Plaintiff's pain and fatigue to be severely limiting but not to a degree that would be work preclusive.

Plaintiff asks the Court to remand because, in addition to appropriate weighing of the evidence as the pertinent SSRs require, the ALJ also noted the absence of a few of the objective medical signs that SSR 14-1p mentions to "help establish the existence" of chronic fatigue syndrome (swollen lymph nodes, extreme pallor and ataxia) in light of the relationship (as described in SSR 14-1p) between that impairment and viral or other infectious disease. See 2014 WL 1371245, at *4. Importantly, as set out in SSR 14-1p, these signs are not the diagnostic symptoms of chronic fatigue syndrome; instead, they are noted to be signs consistent, for example, with an "acute infectious inflammatory event" that may precede its onset. Id. And the ALJ did not rely on the lack of these signs to find that Plaintiff does not suffer from chronic fatigue syndrome or that Plaintiff is not impaired by pain and fatigue caused by this impairment.

Rather, she relied on their absence, along with the other substantial evidence, as having some bearing on the severity, intensity and persistence of Plaintiff's symptoms. With chronic fatigue accepted as an impairment and a decision that correctly examines substantial evidence consistent with the requirements of the SSRs, I find no error in the ALJ's reference to the lack of these signs, among many other factors, in a case with no medical opinion from any source supporting greater limitations and a decision that otherwise complies fully with applicable law. See Patrick F., 2023 WL 2770389, at *4-7 (with lack of signs supportive of more severe symptoms and no treating source opining to any physical functional limitations, ALJ's decision of no disability for claimant with fibromyalgia is affirmed).

Plaintiff's second contention – that his activities as recited in the ALJ's decision are not enough to contradict his subjective statements about the limiting effects of pain and fatigue – presents the Court with a dilemma. Here, the ALJ rejected the non-examining experts' findings that Plaintiff had no severe impairments and established a significantly limited RFC in reliance in part on accepting Plaintiff's activities as Plaintiff described them on application. In argument to the Court, the Commissioner points out that the medical record is replete with contradictory statements by Plaintiff to his treatment providers (and observations by providers) (exemplars are listed *supra*) that permit the inference that Plaintiff's statements on application about both symptom intensity and his daily activities are inaccurate.[4] That is, for the current application,

---

[4] During the Court's review of the record, I noted the troubling fact that, on Plaintiff's prior application, the prior ALJ noted that Plaintiff had admitted in the prior Function Report and testimony, as relevant to the prior period in issue, that he owns rental property and works to pick up rent, supervise maintenance and assist with light repairs, including painting, carpentry and landscaping. Tr. 79, 81. These admissions (along with the balance of the prior evidence) supported the prior ALJ's determination that Plaintiff was no longer disabled. Tr. 84. The statements in the medical record for the current period that the Commissioner highlights establish that, in the more recent period, Plaintiff was performing tasks that seem even more arduous. See, e.g., Tr. 479 ("intermittent heavy exertions"); Tr. 533 ("hard work to keep [properties] updated"). This raises the concerning possibility that Plaintiff's statements in support of the application now in issue intentionally omitted this work because he well understood the adverse impact it might have on his new application. However, because the ALJ did not mention any of this, I have not considered it.

Plaintiff not only did not admit to the activities that he described to treating sources, but also stated that friends performed the work for him and, when asked by the ALJ when he had last done any work at all, "even if it was just for one day," he said the last time was November 13, 2015, well before the period in issue. Tr. 40-41. The problem is that the ALJ did not cite to or rely on this evidence. See Charpentier v. Colvin, C.A. No. 12-312 S, 2014 WL 575724, at *14-16 (D.R.I. Feb. 11, 2014) (with claimant alleging chronic pain, discounting credibility of claimant's subjective statements without stating reasons is legal error requiring remand despite record loaded with inconsistent statements ALJ did not cite). The dilemma for the Court is whether to consider these clearly contradictory statements in assessing Plaintiff's argument about the credibility of his subjective statements.

The Court's solution to the dilemma lies in the fallacy of Plaintiff's contention that the evidence that the ALJ did cite is not enough to support her credibility determination. That is, having reviewed the entirety of this record, and without regard for the many statements contradicting Plaintiff's denial of the ability to do significant work during the period in issue, I find that the ALJ's credibility finding is amply supported by the substantial evidence on which she did rely.[5] See Bergeron v. Colvin, C.A. No. 15-467M, 2016 WL 8673138, at *5, 9-10 & n.10 (D.R.I. Aug. 19, 2016) (court declines to consider evidence establishing flaw in treating source opinion noted by Commissioner that is not cited by ALJ, but affirms based on substantial evidence ALJ did cite), adopted by text order (D.R.I. Sept. 8, 2016). Accordingly, the Court may

---

[5] By way of one example, the ALJ contrasted Plaintiff's description of extreme limits in the abilities to walk and stand with activities that included cooking, cleaning, laundry, driving and shopping in stores, in addition to other substantial evidence such as normal gait, no assistive device and full muscle strength. Tr. 23-24.

12

and does affirm the ALJ's credibility determination without considering the inconsistent statements not cited in the ALJ's decision.

Plaintiff's third argument is based on the ALJ's failure to discuss Plaintiff's post-date-last-insured diagnosis of attention deficit hyperactivity disorder[6] and his subjective statement (in passing) of concentration symptoms ("brain fog") during the period in issue.[7]  This argument fails because it transgresses the bedrock principle of disability law that "it is Plaintiff, not the ALJ, who carries the burden at the RFC phase to show that his RFC is more limited than the ALJ found."  Steven A., 2024 WL 4344865, at *6.  Yet Plaintiff points to no medical opinion or analogous evidence to support the proposition that he was functionally impaired by concentration issues or brain fog, beyond his subjective statements in the Function Report and in testimony that he had issues with concentration,[8] which he admitted he never mentioned to his doctors until after the period in issue.  Tr. 46, 58, 280-83.  With these concerns not raised as significant symptoms during the period in issue, there is no evidence (including no opinion evidence)[9] to sustain Plaintiff's burden of establishing to what degree such concerns actually impacted

---

[6] Well after the close of the period in issue, Plaintiff complained for the first time to a treating source about his difficulty with concentration.  In June 2023, the medical record reflects a first-time diagnosis of attention deficit hyperactivity disorder.  Tr. 1004.

[7] Plaintiff argues that the record contains many references to complaints of problems with focus, "brain fog" and memory.  ECF No. 9 at 13.  As the Commissioner points out, the problem is that his citations are all to periods outside the period in issue.  During the period in issue, the only reference is Plaintiff's comment to his primary care provider in November 2021: "Got Covid in Jan; wonders if he has some 'brain fog' because of this."  Tr. 430.  The provider did not follow up on this comment.

[8] During the ALJ hearing, Plaintiff testified that he suffered from decreased "cognitive function," as well as that the recently diagnosed "ADD problems have become a real challenge for me" and that brain fog was a phenomenon that had "been happening a lot more."  Tr. 46, 58.  On examination by his attorney, Plaintiff clarified with he had had "brain fog," lack of focus and forgetfulness during the period in issue.  Tr. 58.  Apart from the passing comment noted infra n.7, the medical record contains nothing to establish that these symptoms were raised and/or addressed during the period in issue.

[9] The only opinion evidence on point supports the ALJ's Step Two finding.  That is, the ALJ's failure to mention concentration issues as an impairment at Step Two is supported by the findings of the non-examining psychologists who reviewed the entirety of the record for the period in issue and found that Plaintiff had failed to establish any mental impairments.

Plaintiff's ability to function.  Further, the ALJ <u>did credit</u> partially Plaintiff's statements about his difficulty with concentration in that the ALJ's decision states: "the record supports a limitation to simple tasks to account for symptoms of chronic pain and fatigue interfering with his ability to focus on more complex tasks." Tr. 24.  With no evidence (including no opinions) to establish a greater limitation, this finding is affirmed.  There is no need for remand to require the ALJ to provide a more detailed explication.

### IV.     Conclusion

Based on the foregoing, Plaintiff's Motion for Reversal of the Disability Determination of the Commissioner (ECF No. 9) is DENIED and the Commissioner's Motion to Affirm (ECF No. 11) is GRANTED.  The Clerk's office is directed to enter judgment in favor of the Commissioner.

/s/ Patricia A. Sullivan  
PATRICIA A. SULLIVAN  
United States Magistrate Judge  
February 19, 2026